Cameron, J.
delivered the judgment of the Court:
If the title of the Tuscarora tribe of Indians to the lands leased by them to the defendants’ ancestor, depended solely on the confirmation it received by the 2 § of c. 3, acts 1748, to which the 3 § (relied on by the defendants) is added, by way of proviso, the grant and the condition annexed to it, would now be regarded as forming one entire contract between the sovereignty of this State and the tribe of Indians. Their title, however, rests on higher grounds. The Governor and the deputies of the Lords Proprietors, having full and competent powers for that purpose, did, by the grant of *453 the 5th June, 1717, vest the lands thereby granted, in the Tuscarora tribe, absolutely and unconditionally. The grant recites, that it is made “ in consideration of great services, rendered by the said tribe of Indians to the Government, and of their agreeing to relinquish all claim to other lands, which had been before allotted to them.” It contains no condition by which the Indians are bound to reside actually and perpetually on it. It is a conveyance (in substance) in fee-simple, by those having power to convey, to persons, capable of taking and holding lands in fee.
The acts of the General Assembly confirming their title, providing for their comfortable enjoyment of it, by prohibiting white persons from hunting and trespassing on their lands, were such as policy and justice dictated, and are entitled to approbation and support; but the proviso in § 3 c. 3, 1748, under which the defendants claim, being in derogation of rights actually vested in the plaintiffs by the highest authority, cannot be regarded, or allowed to have any weight in deciding this case.
If, however, the Assembly of 1748, had power to annex the condition contained in the proviso referred to, they had equally a right afterwards, to modify, alter, or abrogate that condition. It cannot be contended, that the aforesaid 3 § 3 c. 1748, is irrepealable, and that all which has been done by subsequent assemblies for the modification of it, is void, because repugnant to that proviso.
Pursuing the acts of Assembly on this subject, we find that by c. 16 of acts 1778, certain leases made by the Indians were rendered valid—that the lands leased to Jones, and to other persons, shall revert to, and become the property of the State, at the expiration of the leases, if the nation be extinct; and the lands now belonging to, and possessed by the Tuscaroras, shall revert to, and become the property of the State, whenever the said nation shall become extinct, or shall *454 entirely abandon, or remove themselves off the said lands, and every part thereof.”
The lease made by the Indians to Wm. King, is within the operation of this act; and if any effect is to be allowed to legislative will on this subject, a very different appropriation is made of the land granted to the Indians, on the happening of either of the events mentioned in the act of 1778, from that made by the act of 1748, under which the defendants claim.
We further find, that by the act of 1802, c. , the Indians were authorised to lease out their unleased lands, to extend other leases. Commissioners were appointed under its authority to superintend and direct the management of their concerns; and they finally agreed by treaty with this State (with the approbation and consent of the General Government) at the expiration of the leases, to abandon all claims to the lands, to the State. It is expressly declared and provided by said act, “ that the possession of the lessees shall be considered the possession of the Indians.”
At the time the act of 1802 passed and took effect, the plaintiffs, either by themselves or their lessees, were in possession of all the land comprehended in the grant of the 5th of June, 1717. The General Assembly were apprized that the Indians intended to remove from it; they had agreed to renounce all claim to the land on the expiration of the leases made, and to be made under the said act, for the purpose of securing to them the full benefit of the leases; to allay their apprehensions that their removal from the land might destroy their claims to the rents secured by their leases; in short, to obviate the very objection made by the defendants against the plaintiff’s demand, under color of the proviso in the 3d sect. 3d c. 1748, the General Assembly, with a proper regard to liberality and justice, enacted and declared possession of the lessees should be considered the *455 possession of the plaintiffs;—In effect saying that the removal of the Indians from the land should not prejudice their claim to the rents due and to grow due on leases made and to be made by them.
Viewing this case with reference merely to the acts of Assembly passed on this subject, and admitting that the plaintiff’s claim must be governed by those; it is very clear to us that they are entitled to recover.
There is however, another ground, on which the plaintiffs are entitled to prevail. Admitting (for the sake of argument) that the fee-simple of the land comprehended in the lease, vested by the grant of 1726, the mesne conveyances under it, coupled with the actual removal of the Indians, in Wm. King, the ancestor of the defendants (on which point we give no opinion): yet, as he accepted the lease on which this action is brought, and took possession of the land under it, he could not, and those claiming under him cannot, during the continuance of the lease, say that the plaintiffs have no right to recover the rents reserved and secured by it. Lord Coke says, “ if a man take a lease of his own land, by deed indented, reserving rent, the lessee is concluded.” Co. Lit. § 58. 47 B.—The Court is unanimously of opinion, that the motion for a new trial be overruled, and that there he judgment for plaintiff.